

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DATASTRIP INTERNATIONAL ) 
LIMITED, )
) CIVIL ACTION FILE
  Plaintiff, )
) NO. 1:01-CV-3029-RWS
  v. )
)
INTACTA TECHNOLOGIES, INC., )
)
  Defendant. )

## REPLY MEMORANDUM IN SUPPORT OF DATASTRIP'S MOTION TO AMEND THE COMPLAINT TO ADD DEFENDANT'S SUBSIDIARIES AS PARTIES

NOW COMES DATASTRIP INTERNATIONAL LIMITED ("Datastrip"),

plaintiff in the above-captioned matter, and, in accordance with Local Rule 7.1,

files this reply memorandum in support of its motion, filed on December 6, 2002,

to amend its complaint to add defendant's subsidiaries as parties.

### INTRODUCTION

In its memorandum in opposition to Datastrip's motion to amend, defendant

Intacta Technologies, Inc. ("Intacta") does not deny that its subsidiaries are proper

parties, nor does it assert any cognizable prejudice that would result from adding

those subsidiaries as parties.  Rather, Intacta asserts that the "good cause" standard

of Rule 16(b) of the Federal Rules of Civil Procedure, rather than the more liberal "freely given when justice so requires" standard of Rule 15, applies to Datastrip's motion because the deadline for motions to amend was supposedly on February 24, 2002. Intacta further argues that Datastrip cannot show the required "good cause" for modifying that deadline.

Intacta is wrong. Most significantly, no deadline for moving to add parties was ever set by the Court in any scheduling order entered in this case. Rule 16(b) therefore does not apply. But even if such a deadline had been set, good cause for Datastrip not meeting it nonetheless exists. The proffered deadline, February 24, 2002, was at the beginning of discovery. Because Intacta concealed the fact that it is a holding company and that its subsidiaries are the operating companies that make and sell the software at issue in this litigation, Datastrip was unaware of the need to amend until these facts emerged *after* several months of discovery.

Datastrip's motion to amend to add the defendant's subsidiaries as co-defendants should therefore be granted.

## ARGUMENT AND CITATION OF AUTHORITIES

I.    Intacta Does Not Deny That Intacta Delaware
      and Intacta Labs Are Proper Parties.

Nowhere in Intacta's opposition memorandum does Intacta deny that: (1) the named defendant, Intacta Technologies, Inc., is a holding company; (2) Intacta

Delaware and Intacta Labs are its wholly-owned subsidiaries; and (3) Intacta

Delaware and Intacta Labs are the operating companies that perform the acts

Datastrip accuses of infringement.  In short, Intacta does not deny the key facts that

show that its subsidiaries are proper parties.

II.     Intacta Asserts No Cognizable Reason
        To Deny Amendment Under Rule 15.

        Leave to amend the complaint to join additional defendants should be

"freely given" as long as the amendment would be "just."  Fed. R. Civ. P. 15 and

21; *see also Foman v. Davis,* 371 U.S. 178, 182 (1962).  Indeed, as Rule 21 of the

Federal Rules makes clear, "Parties may be … added by order of the court on

motion of any party … at any stage of the action and on such terms as are just."

Fed. R. Civ. P. 21.  Datastrip seeks no change to this suit other than to formally

name Intacta's two operating subsidiaries as co-defendants with their parent

holding company.

        As Datastrip explained in its opening memorandum, this amendment will not

result in the need for any additional discovery or trial time.  The only effect will be

ensuring that an injunction covering all the relevant Intacta companies can be

granted by the Court and that the operating Intacta companies that have revenues

from the infringing product will be liable for any award of damages or attorney's

fees pursuant to 35 U.S.C. § 285.

In fact, Intacta admits in its opposition memorandum that it has already "agreed that any judgment against it in this case will be binding on its subsidiaries." Intacta Mem. at 6. Thus, formally naming those subsidiaries as co-defendants will simply allow Datastrip to enforce via the Court's contempt and other powers what the Intacta companies have already agreed to.

Significantly, the only alleged prejudice resulting from Datastrip's requested amendment that Intacta can assert is that "[n]aming the subsidiaries as defendants will hinder Intacta's ability to attract investors, form business partnerships, or otherwise conduct its business." Intacta Mem. at 6. This pure, unsupported *ipse dixit* makes little sense. The alleged "harm" -- disclosure to investors that the Intacta companies are at risk of losing a lawsuit -- is precisely the type of disclosure that should be made to investors in light of securities disclosure requirements, particularly since Intacta Technologies has agreed to "make any judgment binding on its subsidiaries." *Id.* Certainly Intacta should not be assisted in concealing such information from its investors. And, in any event, any alleged impact on a company's ability to "attract investors [or] form business partnerships" is simply not a legally cognizable justification to avoid being named in a lawsuit. For example, Intacta's subsidiaries could hardly assert a negative impact on business opportunities as a basis to move to dismiss if Datastrip is forced to bring a separate suit against those companies rather than amend its complaint here.

- 4 -

Because the standards of Rules 15 and 21 are met, Datastrip's motion should be granted. *See E.I. duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F. Supp. 310, 314-5 (D. Del. 1985) (granting second motion to amend to add subsidiary as defendant in patent litigation despite delay of six months because of lack of prejudice).

III.    Intacta's Heavy Reliance On *Sosa v. Airprint Systems* Is Misplaced.

The gravamen of Intacta's opposition is that, pursuant to *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998), Datastrip must show "good cause" under Rule 16 of the Federal Rules of Civil Procedure for moving to amend after the deadline set forth in the Court's discovery schedule, and no good cause exists here. Intacta is incorrect.

A.    *Sosa* Does Not Apply Here Because Datastrip
Is Not Seeking To Change A Rule 16(b) Deadline.

First, *Sosa* is wholly inapplicable. In *Sosa*, the plaintiff moved to amend after the deadline for such motions set by the district court in a Rule 16(b) scheduling order. 113 F.3d at 1418. Thus, the Eleventh Circuit held that Rule 16(b)'s requirement of "showing ... good cause" to modify that deadline had to be met. *Id.* at 1419.

What Intacta overlooks, however, is that -- unlike in *Sosa* -- the Court's scheduling order in this case does not set a deadline for moving to amend the

- 5 -

pleadings. (*See* Scheduling Order, entered March 29, 2002). Indeed, while the

parties' preliminary report referred to by Intacta (Intacta Mem. at 2) proposed such

a deadline, the Court's scheduling order, as entered, did not adopt or include it.

Because Datastrip's motion was not made after a Rule 16(b) deadline, the

Rule 16(b) standard for modifying such deadlines is simply inapplicable.  Thus, the

normal standards for amendments under Rules 15 and 21 -- "freely given when

justice so requires," "at any stage of the action" -- govern.

> **B.      Datastrip Has Good Cause For Moving Now
>           Because Intacta Hid The True Nature
>           Of The Three Intacta Companies.**

Even if Datastrip's motion required a showing a good cause, moreover, that

standard is easily met here.  As Datastrip explained in its opening memorandum,

Datastrip did not learn of the need to amend until months after the deadline cited

by Intacta.  *See* Datastrip Mem. at 4.  Intacta's own website misled Datastrip by

calling the software at issue "***INTACTA Technologies** core technology.*"  *See id.*

(emphasis added).  Indeed, the company name "Intacta Technologies" appears

numerous times throughout the defendant's web site (located at www.intacta.com)

as if Intacta Technologies were an operating entity.  (*See* Pages from Intacta's web

site, attached hereto as Exhibit 1).  To the best of Datastrip's knowledge, Intacta's

website does not contain any indication or explanation that Intacta Technologies is

just a holding company of which Intacta Delaware or Intacta Labs are the operating

arms.  Indeed, Datastrip has not found anywhere on Intacta's web site any mention

of Intacta Technologies' subsidiaries Intacta Delaware or Intacta Labs.  *See, e.g.*,

Ex. 1.

Rather than prove a lack of diligence on Datastrip's part, the SEC

disclosures that Intacta attaches to its opposition show why Datastrip was unaware

that Intacta Delaware and Intacta Labs should be named as codefendants until well

after the February 24, 2002 deadline urged by Intacta.  The first SEC disclosure,

attached as Exhibit A to the Declaration of Christopher J. Clugston in support of

defendant's opposition, begins:

> ***Intacta Technologies Inc. (the "Company")***, a Nevada corporation, ***is
> a developer and marketer of software products based on its patented
> technology*** that, through its unique combination of compression,
> encoding and error correction processes, the technology [sic]
> transforms any data format ranging from text, graphic, audio or video
> from a binary file into ***INTACTA.CODE*** ...."

(emphasis added).  This statement could not be clearer; defendant Intacta

Technologies claims -- incorrectly -- that it itself develops and sells the software

that generates the infringing INTACTA.CODE.

In contrast, the SEC disclosure describes "Intacta Labs Ltd" as "currently

conducting new research projects...," not as supporting the existing infringing

software.  *See* Ex. A to Decl. of Christopher J. Clugston.  Similarly, the description

of Intacta Technologies' acquisition of Intacta Delaware Inc. omits even a hint that

it is Intacta Delaware, rather than Intacta Technologies, that markets and sells the

- 7 -

infringing software. *See id.* And finally, the last sentence of Intacta's Exhibit A states that "***prior to*** the reverse acquisition [of Intacta Delaware], [Intacta Technologies] ***was*** a public shell corporation with no significant operations ..." Again, this sentence strongly implies that now, after Intacta Delaware's acquisition, Intacta Technology is ***not*** just a shell corporation without significant operations, but in fact is the operating company.

Essentially the same language is found in the other SEC filing that Intacta relies upon. *See* Ex. B to Decl. of Christopher J. Clugston ("Intacta Technologies Inc. ... is a developer and marketer of software products ... [that] transforms any data format ... into INTACTA.CODE .... Intacta Labs Ltd ... is currently conducting new research projects ...").

Thus, the facts here are materially different than those in *Sosa.* In *Sosa*, the plaintiff received the information that revealed the need to amend prior to the scheduling order deadline for amending, yet the plaintiff failed to move to amend without cause until the deadline had passed. *See* 113 F.3d at 1419. Here, the deadline to amend that Intacta claims exists was at the start of discovery, but -- as a result of Intacta's own public descriptions of itself -- Datastrip was unaware of the need to move to amend until the facts giving rise to Datastrip's motion were revealed in a deposition held several months into discovery. Thus, it was impossible for Datastrip to move prior to Intacta's proffered deadline. *See Pumpco*

- 8 -

*Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668-9 (D. Colo. 2001) ("The fact that a party first learns, through discovery or disclosures, information necessary for the assertion of a claim after the deadline to amend established in the scheduling order has expired constitutes good cause to extend that deadline.")

As explained above, Rule 16(b) is inapplicable here. Even if it were to apply, however, good cause exists for Datastrip's not bringing its motion to amend by the February 24, 2002 date urged by Intacta.

CONCLUSION

For the foregoing reasons and those set forth in Datastrip's opening memorandum, because the standards of Rule 15 and 21 are met here, and regardless of whether Rule 16(b) applies, Datastrip's motion to amend to add the defendant's subsidiaries as parties should be granted.

Respectfully submitted,

KING & SPALDING LLP

Bruce W. Baber
(Georgia Bar No. 030050)
191 Peachtree Street, N.E.
Atlanta, Georgia 30303
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

Milton Springut
David A. Kalow
David S. Brafman
KALOW & SPRINGUT LLP
488 Madison Avenue
New York, New York 10022
Telephone: (212) 813-1600
Facsimile:  (212) 813-9600

Attorneys for Plaintiff
DATASTRIP INTERNATIONAL
   LIMITED

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Local Rule 7.1(D), that the foregoing

memorandum has been prepared using 14 point Times New Roman font.

Bruce W. Baber



# EXHIBIT / ATTACHMENT

_A_

(To be scanned in place of tab)



# INTACTA™

Corporate Info

INTACTA.CODE

Products

Solutions

HealthCare

Partner Program

Press Room

Investors

Info Request

Contact US

Support

## INTACTA™



INTACTA Technologies, Inc. (OTCBB:ITAC), founded in 1 technology leader in providing enabling application for ir documents with digital formats and enhancing communications. Originally developed for the defense in secure transmission of field battle plans, INTACTA Tec privatized and patented INTACTA.CODE™ to develop proc applications that enable the secured faxing and emailing and digital based information across the Internet.

Our mission is to develop performance enhancing communication and management technologies that enable organizations to bridge existing inf systems to a new communications media designed to drive business I INTACTA.CODE serves as the foundation for delivering software components th used to enhance information across a wide variety of industry segments and processes.

**Announcements:**

May 30 2002
INTACTA signs license agreement with Zixsys Inc., a subsidiary of Sanyo Semic Company

Apr 30 2002
Verb Exchange(TM) and Intacta Technologies Inc. Create Alliance to Simplify Eff Secure Communications Management and Deployment for the Mobile Workforce

Apr 09 2002
Zebec Data Systems, Intelleca Healthcare and Intacta Technologies Create Allia Improve Healthcare Claims Processing

Mar 12 2002
Sanyo Semiconductor  Company establishes affiliate company, SecurityART

Problems with the site? Contact webmaster@intacta.com
Copyright © 2001 INTACTA Technologies, Inc.
INTACTA.CODE is a registered trademark of Intacta Technologies, Inc.

Privacy Policy | Terms of Use

## EXHIBIT A



Home


**INTACTA.CODE**

**Products**

**Solutions**

**HealthCare**

**Partner Program**

**Press Room**

**Investors**

**Info Request**

**Contact US**

**Support**

## Corporate Info

INTACTA (OTCBB:ITAC) is a U.S. based software company headquartered in Georgia. INTACTA develops software designed to move information across dig non-digital media - paper to mainframe.
Our patented technology that, through its unique combination of comp encoding and error correction processes, transforms any data including text, audio or video into INTACTA.CODETM. INTACTA.CODE technology provides s and applications that enable enterprises to bridge their communicatio management information systems across digital and non-digital media.

### INTACTA's Industry Impact

Despite the transition of business and consumers to a computer-based envir paper-based documentation continues to grow. According to Jeffries and C Inc., the average amount of paper generated by corporations continues to 25% annually. Moreover, the Journal of Accounting estimates that the businesses for the distribution, storage and processing of paper-based docur approximately $100 billion annually. Few existing applications enable enterp maintain data accurately and securely in either digital or paper format. M difficulties in exchanging data between digital and paper formats are enterprises to seek solutions that would allow them to more effectively and e manage the production, distribution and storage of data.

In addition, the increasingly widespread use of mobile and wireless commun including the Internet, enables enterprises to collaborate, interact, access info and conduct business transactions on a broadened basis. The market for communication services is growing rapidly. U.S. Bancorp Piper Jaffray estima the wireless data application segment of this industry is expected to grow to $5 in revenues by 2004. According to the Yankee Group, the "corporate ex segment of the wireless communication market is expected to acco approximately 30% of the total market share of the wireless data application by 2003. New mobile computing devices such as personal digital assistants, i Palm OS and Windows CE based handheld devices, Internet appliances, an phones extend traditional enterprise tiers for maintaining and communicati from centrally located mainframe computers and servers to remote devices via systems.

### Benefits Provided by INTACTA.CODE<sup>TM</sup> Technology:

- INTACTA complies with HIPAA regulations in healthcare.
- protection of sensitive data such as patient records and business docume unauthorized access or use through security features, including e authentication and registration
- enhanced hardware products and software applications of an enterprise's communication and information management systems at a cost that is m than a conversion to a new system but with similar functionality

Case 1:01-cv-03029-RWS   Document 46   Filed 01/08/03   Page 15 of 21

- protection of sensitive data on mobile devices.
- reduction of bandwidth required for storage and transmission of data
  enterprises to transmit the information in a faster, more cost-effective
  and requires less space in both digital and paper-based media for the
  and archiving of documents.
- improved performance of wireless communications and utility of
  computing devices and software such as personal digital assistants, n
  and palm-size computers and smart cellular phones by enhancing their a
  receive, store and transmit data.
-

INTACTA's software applications enable developers, ISVs, and VARs and C
quickly meet the challenge of addressing a broad range of horizontal s
applications within the enterprise mobile computing framework, including:

- database applications which provide software solutions for data and con
  an enterprise's server database;
- client/server applications which provide software solutions for mobile co
  applications with mobile computing devices; and
- Intranet/Internet and e-commerce applications that provide software s
  requiring secure data transmissions.

INTACTA.CODE$^{TM}$ flexibility and scalability provides the building blocks for cr
range of solutions to address enterprise communication and information mana
problems in the digital environment.

Problems with the site? Contact webmaster@intacta.com
Copyright © 2001 INTACTA Technologies, Inc.
INTACTA.CODE is a registered trademark of Intacta Technologies, Inc.

Privacy Policy | Terms of Use



**Home**

**Corporate Info**

**INTACTA.CODE**

**Products**

**Solutions**

**HealthCare**

**Partner Program**

**Investors**

**Info Request**

**Contact US**

**Support**

**Thursday May 30, 8:30 am Eastern Time**

**Press Release**

*SOURCE: INTACTA Technologies Inc.*

**INTACTA signs license agreement with Zixsys Inc., a subsidiary of Sany Semiconductor Company**

**Zixsys launches ID Controller, a multi-layered biometric access control using INTACTA.CODE technology**

**Trading Symbol: ITAC: OTCBB**

ATLANTA, GA, May 30 /PRNewswire-FirstCall/ - INTACTA Technologies Inc. ("IN (OTCBB: ITAC - News) today announced it has entered into a license agreemen Zixsys Inc. ("Zixsys"), a subsidiary of SANYO Semiconductor Company ("Sanyc Under the license agreement, INTACTA has granted a worldwide, non-exclusive to Zixsys to use INTACTA.CODE advanced data encoding software to design, manufacture and market highly secure products for access control, public prote and around airports, passenger identification and employee identification.

"The agreement between INTACTA and Zixsys combines technologies and know that we believe can create a new standard of security products that address a range of requirements for industry and government," said Noel Bambrough, Pre and CEO of INTACTA. "Zixsys' first product, utilizing the unique capabilities of INTACTA.CODE to encode and secure both the biographic and corresponding bic information, is an ideal marriage of technologies for critical controlled access se applications."

The granting of the license is the first formal step in the establishment of a rela between Zixsys and INTACTA. In its March 12, 2002, news release, INTACTA announced the formation of Zixsys (at the time named SecurityART) by six affil Sanyo Semiconductor Company, one of the five principal companies of Sanyo E Co. Ltd.

In consideration for licensing the INTACTA software, Zixsys has agreed to pay a license fee and certain royalties based upon the level of sales generated by Z incorporating INTACTA.CODE, over a 10-year term.

ID Controller integrates INTACTA's data encoding and decoding software, Sany camera with fingerprint sensor technology, and Imagis Technologies Inc.'s facia recognition software, ID-2000.

ID Controller confirms an identity by reading the fingerprint and facial details ei in INTACTA.CODE on an individual's ID card, and comparing them against the . finger and face of the person who submitted the card, as read by a fingerprint r

and camera built into the access control unit. The hardware and software produ
which is completely customizable, is used to  safeguard environments where co
access security is of utmost importance,  such as airports, hotels, government
buildings, large event venues, and  industrial and office facilities.

### About INTACTA Technologies Inc.

INTACTA.CODE (OTCBB: ITAC - News) provides a method of embedding data, s
and reliably, for security solutions utilizing biometric technologies such as facial
recognition and fingerprints, across a full array of digital (mainframe to PDA), w
and hard copy devices. INTACTA.CODE may be utilized to provide hierarchical la
security for the same block of data. INTACTA.CODE is not just another version e
encryption. It is a unique process that provides the security of encryption with a
other functions. INTACTA.CODE is a COM-based component that compresses ar
encrypts any data - such as applications, images, database records, and  docun
into a graphic form representing the binary information. Any ODBC  compliant c
can store and query INTACTA.CODE, which can be sent  electronically over an in
the Internet, or wirelessly to mobile devices. It can also be printed and faxed al
secure transmission of sensitive data  on printed material. http://www.intacta.c

### About Zixsys Inc.

Zixsys, headquartered in Japan, will develop, manufacture and market ID  Cont
creating a number of multi-level access control systems that incorporate biome
The focus of Zixsys will be to design, manufacture, and  market sophisticated d
for access control, the first line of defense in controlling who enters secure facil
well as ID verification for  documents, and ID card authentication. Zixsys Inc. is
private company  controlled by SANYO Semiconductor Company.

### About SANYO Semiconductor Company

The SANYO Semiconductor Company is one of the five principal companies of  S
Electric Co., Ltd. SANYO Semiconductor Company produces a wide range of
semiconductor devices used in embedded system solutions for market-leading
electronic applications. Specializing in mixed two-signal devices that  understan
analog and digital signals, SANYO Semiconductor Company is  increasingly beco
known for its ability to provide system solutions for the  latest technologies. SA
Semiconductor Company is on the web at http://www.semic.sanyo.co.jp/index_

### About Imagis Technologies Inc.

Imagis (OTCBB: IGSTF - News) is a developer and marketer of software applica
and advanced biometric facial recognition  software solutions both as products a
Software Development Kit. These  applications provide a range of security solut
various industry sectors including airports, law enforcement, customs, immigral
other government agencies, and gaming. Imagis currently has well over a hund
installations of its software in the United States, UK, Canada, and Mexico. Imag
Chairman is  Oliver "Buck" Revell, who served for over 30 years in the FBI, and
his career advanced to the number two-career post of Associate Deputy Directo
our website at http://www.imagistechnologies.com.

### Forward Looking Statements

This press release contains statements that constitute "forward-looking  statem

within the meaning of Section 21B of the Securities Exchange Act of 1934, as amended. Such forward-looking statements involve known and unknown risks, uncertainties and other factors that may cause our actual results, performance, achievements to differ materially from the anticipated results, performance, or achievements expressed or implied by such forward-looking statements.

Forward-looking statements in this release include our expectations as to the s of our arrangement with Zixsys and the anticipated benefits of this relationshir anticipated benefits to potential customers from ID Controller; and our intentic complete an investment in Zixsys within the next three months. Factors that cc cause actual results to differ materially from anticipated results include risks ar uncertainties such as any unforeseen incompatibilities between our technology technology of Zixsys; any technical difficulties related to integrating our techno and the technology of Zixsys; the possibility of technical difficulties or delays in product introductions and improvements; the acceptance of the ID Controller ii targeted markets; product development, product pricing and other initiatives of competitors. We disclaim any intention or obligation to update or revise any for looking statements, whether as a result of new information, future events or ot

Contact:

Noel Bambrough
President & CEO
Intacta Technologies Inc.
Tel: 404-880-9919
Email: nbambrough@intacta.com
Website: http://www.intacta.com

Zixsys Inc
Huw Thomas
Bear Valley Technology Centre
Tel: 81-48-529-7200, ext. 4353
Email: huw@mo.idc.lsi.sanyo.co.jp
http://www.semic.sanyo.co.jp/index_e.htm

Sandra Buschau
Imagis Technologies Inc.
Tel: 604 684-2449
Email: sandy@imagistechnologies.com
Website: http://www.imagistechnologies.com

Problems with the site? Contact webmaster@intacta.com
Copyright © 2001 INTACTA Technologies, Inc.
INTACTA.CODE is a registered trademark of Intacta Technologies, Inc.

Privacy Policy | Terms of Use



| | |
|---|---|
| Home | |
| Corporate Info | |
| INTACTA.CODE | |
| Products | |
| Solutions | |
| HealthCare | |
| Partner Program | |
| Press Room | |
|  | |
| Info Request | |
| Contact US | |
| Support | |

## Investor Relations

|  |  |
|---|---|
| **email:** | investor.relations@intacta.com |
| **Exchange:** | OTCBB, Berlin, Frankfurt: Symbol, ITAC |
| **Transfer Agent:** | Corporate Stock Transfer, Denver CO |
| **Independant Accountants:** | BDO Seidman, LLP |
| **Address:** | **INTACTA Technologies Inc.** |
|  | Resurgens Plaza South |
|  | 945 E. Paces Ferry Rd, N.E. |
|  | Suite 1445 |
|  | Atlanta, GA 30326-1372 |
|  | Tel: (404) 880-9919 |
|  | Fax: (404) 880-9219 |
| **Corporate Officers:** | Noel Bambrough, MBA |
|  | *President and Chief Executive Officer* |
| **Board of Directors:** | Chairman:  Altaf Nazerali |
|  | Directors: |
|  | Ross Wilmot |
|  | Noel Bambrough |
| **Senior Management:** | Hsing Wu Lee |
|  | *Chief Technologist* |

Request Investment Information

Problems with the site? Contact webmaster@intacta.com
Copyright © 2001 INTACTA Technologies, Inc.
INTACTA.CODE is a registered trademark of Intacta Technologies, Inc.

Privacy Policy | Terms of Use



| | |
|---|---|
| **Home** | |
| **Corporate Info** | |
| **INTACTA.CODE** | |
| **Products** | |
| **Solutions** | |
| **HealthCare** | |
| **Partner Program** | |
| **Press Room** | |
| **Investors** | |
| **Info Request** | |
| **Support** | |

## Contact US

We look forward to your comments and inquiries. For more information on INT
please contact us at the numbers provided below.

**INTACTA Technologies, Inc.**
Resurgens Plaza South
945 E Paces Ferry Road NE
Suite 1445
Atlanta, GA 30326-1372
(404) 880-9919 Telephone
(404) 880-9219 Fax

Problems with the site? Contact webmaster@intacta.com
Copyright © 2001 INTACTA Technologies, Inc.
INTACTA.CODE is a registered trademark of Intacta Technologies, Inc.

Privacy Policy | Terms of Use

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Reply

Memorandum In Support Of Datastrip's Motion To Amend The Complaint To

Add Defendant's Subsidiaries As Parties upon defendant, by causing true and

correct copies thereof to be deposited in the United States mail, postage prepaid,

addressed to defendant's counsel of record as follows:

> Mr. William M. Ragland, Jr.
> Powell, Goldstein, Frazer & Murphy, LLP
> 16th Floor
> 191 Peachtree Street
> Atlanta, Georgia  30303
>
> Mr. D. William Toone
> Dorsey & Whitney LLP
> U.S. Bank Centre
> 1420 Fifth Avenue, Suite 3400
> Seattle, Washington  98101-4010

This 8th day of January, 2003.

Bruce W. Baber